# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GUARANTEED RATE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12 C 6776 |
| ) | |
| MISTY LAPHAM, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Guaranteed Rate, Inc. (GRI) has sued its former employee Misty Lapham for breach of contract, breach of fiduciary duty, and tortious interference with prospective economic advantage. Lapham removed the case from state court based on diversity of citizenship. She then moved to dismiss for lack of personal jurisdiction. For the reasons stated below, the Court grants Lapham's motion.

## Facts

GRI is in the mortgage banking business and is headquartered in Chicago. In 2009, GRI hired Lapham as a vice president of mortgage lending in its San Diego, California office. She essentially worked as a loan officer.

Lapham left the company at the end of January 2012 and went to work for Bank of Manhattan in California. GRI alleges that Lapham breached her employment agreement and her fiduciary duty to GRI by soliciting one of her former GRI coworkers to work with her at Bank of Manhattan. GRI also alleges that Lapham's actions

constituted tortious interference with prospective economic advantage.

In April 2010, while working for GRI, Lapham signed an employment agreement called a Sales Compensation Plan. This agreement contained a term stating that the parties "irrevocably submit to the exclusive jurisdiction of the courts of the state of Illinois and federal courts located in Cook County, Illinois for the purposes of any action or proceeding arising with respect to this Agreement." Compl., Ex. A. Approximately a year later, Lapham signed a second Sales Compensation Plan. The second contract contained a term stating that "[t]his Plan supersedes all other plans or agreements in effect prior to the execution of this Agreement." Compl., Ex. B. The second contract did not include a forum selection clause. Rather, it contained an arbitration provision stating that "[a]ny and all claims (legal or equitable), demands, disputes or controversies" between Lapham and GRI would be resolved by arbitration and requiring the arbitration to take place in Chicago. *Id.* Despite this term, GRI filed a lawsuit rather than a demand for arbitration.

**Discussion**

Lapham has moved to dismiss for lack of personal jurisdiction. GRI argues that the forum selection provision in the first Sales Compensation Plan confers jurisdiction over Lapham in Illinois and argues alternatively that even without that provision, Lapham has sufficient contacts with Illinois to make jurisdiction appropriate here.

Lapham argues that the first agreement's forum selection provision is no longer operative because the second agreement superseded the first. The second Sales Commission Plan specifically stated that it "supersedes all other plans or agreements in effect prior to the execution of this Agreement," a term that by its plain language

2

includes the first agreement.  Both agreements cover the same topics, making it relatively obvious that the parties did not intend for both to be operative at the same time.  The second agreement's arbitration provision, which contained its own forum selection clause, substituted for the first agreement's term requiring litigation to take place in Illinois courts.

Both sides cite Illinois cases in interpreting the agreements, so the Court relies on Illinois law, though there is no basis to believe that California law is any different.  In Illinois, a "novation" is the "substitution of a new contract or obligation for an existing one which is thereby extinguished." *Greenbaum & Browne, Ltd. v. Braun*, 88 Ill. App. 3d 210, 213, 410 N.E.2d 303, 306 (1980). The elements of a novation are a previous, valid obligation; the parties' subsequent agreement to a new contract; the extinguishment of the old contract; and the validity of the new contract.  *Id.* at 213, 410 N.E.2d at 307; *see also Pielet v. Pielet*, ___ Ill. 2d ___, ___ N.E.2d ___, 2012 WL 4949528, at *13 (Oct. 18, 2012).  Each of these elements is met here.  In particular, the second agreement's express provision that it "supersedes all other plans or agreements in effect prior to the execution of this Agreement" makes it clear that the first agreement, including the forum selection provision, is no longer operative.  GRI points to the fact that the first agreement said that the parties "irrevocably" submitted to the jurisdiction of Illinois courts, but it cites no authority supporting the proposition that parties that make an "irrevocable" agreement cannot for that reason extinguish it.  In sum, the first agreement's forum selection agreement no longer governs, and thus it does not provide a basis for personal jurisdiction over Lapham here.

GRI argues that Lapham is estopped from arguing that the earlier agreement no

3

longer governs, because she has made claims in a separately-filed suit in California that rely on that agreement. As Lapham points out, however, she does not assert the validity of the first agreement in the California case but rather argues that certain of its terms violate California law and are thus unenforceable. There is no conflict with the position she takes in seeking dismissal of the present case.

GRI relies next on the second agreement's provision in which Lapham agreed to arbitrate disputes in Chicago. This lawsuit, however, is not an arbitration proceeding; GRI elected to file suit in court rather than to initiate arbitration. The Court agrees with those courts that have concluded that an arbitration-related forum selection term is insufficient to establish personal jurisdiction for a lawsuit filed in court. *See, e.g., United Fin. Mortg. Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 892-93 (N.D. Ill. 2002) (collecting cases).

For these reasons, personal jurisdiction cannot be premised upon provisions in either of the agreements. The Court therefore turns to Illinois law. *See* Fed. R. Civ. P. 4(k)(1)(A) (personal jurisdiction exists in federal court if it would exist in a state court in the forum state). An Illinois statute permits a court in this state to exercise jurisdiction to the extent that due process permits. 735 ILCS 5/2-209(c). The analysis turns on whether the U.S. Constitution's Due Process Clause permits an Illinois court to exercise jurisdiction over Lapham on GRI's claims. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

GRI does not argue that general jurisdiction over Lapham exists in Illinois. General jurisdiction requires the defendant to have "continuous and systematic" contacts with the forum state that "must be sufficiently extensive and pervasive to

4

approximate physical presence" in the state. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal quotation marks omitted). Lapham quite clearly lacks contacts with Illinois that rise to this level.

Rather, GRI argues that the Court has specific jurisdiction over Lapham. This requires GRI to show that Lapham "purposefully availed [her]self of the privilege of conducting business in the forum state or purposefully directed [her] activities at the state, . . . the alleged injury [arose] from [her] forum-related activities, . . . [and] the exercise of jurisdiction . . . comport[s] with traditional notions of fair play and substantial justice." *Id.*

Lapham entered into a contract with an Illinois company, but an "out of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR, Inc. v. Turner Diesel, Inc.*, 107 F.3d 1272, 1277 (7th Cir. 1997). "Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment [of the privilege of conducting activities in the forum state] that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King Corp. v. Rudziewicz*, 471 U.S 462, 479 (1985)).

Each side negotiated and executed the contracts from its home base – GRI in Illinois and Lapham in California – so that factor does not tip one way or the other. Lapham's performance of her employment duties, however, was focused entirely on California. GRI hired her to work in California and to generate California-based loans. Lapham states in her affidavit, and GRI does not dispute, that her mortgage broker license did not permit her to generate loans in any other state. Lapham worked with

5

other California-based GRI employees at an office in that state. She unquestionably had regular contact with the company's Chicago headquarters, but that does not alter the fact that her performance took place entirely in California. Her contacts with company headquarters, though they were a regular part of her employment responsibilities, are insufficient to give rise to specific jurisdiction here. (Among other things, the claim in this case does not arise from those contacts.) Lapham's alleged tortious conduct likewise was centered entirely in California. Lapham and the coworker whom she allegedly solicited worked for GRI together in California. When Lapham left GRI, the coworker also left to work in California for the same company as Lapham. It is reasonable to infer that any solicitation that Lapham did with respect to the coworker – the conduct that forms the basis for GRI's claims – took place in California. In short, there is no nexus between the activities underlying GRI's tort claims in this case and the state of Illinois.

GRI relies on *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997), which it cites for the proposition that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." Pl.'s Mem. at 11. The Seventh Circuit, however, has carefully circumscribed *Janmark's* reach. *See Mobile Anesthesiologist Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445-46 (7th Cir. 2010). Though intentionally tortious conduct may, in appropriate circumstances, provide a basis for the exercise of jurisdiction in the home state of the injured party, this is so "only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there." *Id.* at 445. That is not the case here. Lapham's actions that GRI alleges were tortious were aimed at

California. Specifically, she is claimed to have solicited a GRI employee who worked there to work for another entity in that state. In addition, one would reasonably expect that any injury to GRI from these actions occurred in California. First, it is undisputed for present purposes that GRI's California operation originated only California mortgage loans, so any lost income that GRI experienced was lost in that state. Second, assuming GRI had to hire someone to replace the former employee, it is fair to infer that the replacement likewise was hired to work in California.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion to dismiss [dkt. no. 5] and directs the Clerk to enter judgment dismissing this action for lack of personal jurisdiction.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 6, 2012